IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

ANTHONY H. CRUZ,

       Plaintiff,

v.                             CASE NO. 2:06-cv-00235

MICHAEL J. ASTRUE,
Commissioner of Social Security[1],

       Defendant.


PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's brief in support of the complaint and Defendant's brief in support of judgment on the pleadings.

Plaintiff, Anthony Cruz (hereinafter referred to as

---

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Under Fed. R. Civ. P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

"Claimant"), protectively filed applications for SSI and DIB on May 28, 2004, alleging disability as of July 15, 2002, due to right eye blindness, bipolar disorder and a slipped disc in his spine. (Tr. at 55, 80, 243-46.) The claims were denied initially and upon reconsideration. (Tr. at 28-31, 36-38, 248-52, 254-56.) On May 6, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 39.) The hearing was held on October 18, 2005, before the Honorable James P. Toschi. (Tr. at 261-84.) By decision dated November 8, 2005, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-21.) The ALJ's decision became the final decision of the Commissioner on January 27, 2006, when the Appeals Council denied Claimant's request for review. (Tr. at 4-7.) On March 30, 2006, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential

evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2005).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2005).  The Commissioner must show two things: (1) that

3

the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. <u>McLamore v. Weinberger</u>, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of a back disorder and vision problems. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations. (Tr. at 18.) As a result, Claimant cannot return to his past relevant work. (Tr. at 18.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as sandwich maker and landscape worker, which exist in significant numbers in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 20.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was

4

defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was forty-one years old at the time of the administrative hearing.  (Tr. at 264.)  Claimant obtained his GED and completed college classes while incarcerated.  (Tr. at 265.) In the past, he worked as a kitchen helper in a restaurant and as a laborer for a roofing company.  (Tr. at 277-79.)

The Medical Record

The court has reviewed all evidence of record, including the

5

medical evidence of record.  The court will summarize the medical evidence of record related to Claimant's mental condition, as Claimant's arguments relate primarily to his mental impairments and the ALJ's treatment thereof.

On September 15, 2004, and September 21, 2004, Laberta S. Salamacha, M.A. examined Claimant at the request of his attorney. Claimant was currently taking Desyrel and stated he was undergoing treatment for bipolar disorder.  Claimant reported the medication was somewhat helpful in alleviating his mood symptoms.  Claimant reported use of marijuana and that he used alcohol and drinks to intoxication on a "four-month basis."  (Tr. at 134.)  At the time, Claimant resided in a homeless shelter.  (Tr. at 135.)  On the WAIS-III, Claimant attained a performance IQ score of 86, a verbal IQ score of 79 and a full scale IQ score of 80.  The scores were valid.  Claimant's affect appeared flat.  His stream of thought appeared slowed.  Claimant's insight was fair, and his judgment was likely impaired.  There were lapses of attention and concentration at times.  (Tr. at 136.)  Ms. Salamacha diagnosed bipolar disorder and history of poly substance abuse on Axis I and borderline intellectual functioning on Axis II.  (Tr. at 137.)  Ms. Salamacha completed an assessment on which she opined that Claimant's ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was

extremely limited.  (Tr. at 139.)  In addition, she opined that Claimant was markedly limited in the ability to maintain attention for extended periods, maintain regular attendance, be punctual within customary tolerances and work in coordination or proximity to others without being unduly distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from coworkers and get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. (Tr. at 140.)  The vocational expert testified at the administrative hearing that when such limitations were included in a hypothetical question, he could identify no jobs.  (Tr. at 281-82.)

The record includes treatment notes from Process Strategies dated July 9, 2004, July 22, 2004, August 19, 2004, September 19, 2004, and October 14, 2004.  (Tr. at 143-47.)  On July 9, 2004, Claimant reported his last use of alcohol was one week ago.  His last use of marijuana was yesterday.  (Tr. at 146.)  Claimant reported depression and decreased energy.  (Tr. at 146-47.)  On July 22, 2004, Claimant reported fatigue during the day.  Claimant was no longer going to Narcotics Anonymous, and it was recommended that he return.  (Tr. at 144.)  On August 19, 2004, Claimant reported he was going to school at the readiness center.  Claimant was neat and clean and had good eye contact.  (Tr. at 144.)  On September 14, 2004, Claimant was neat and clean.  His speech was

pressured.  He reported he had a lot on his mind with school.  (Tr. at 145.)  On October 14, 2004, a treatment note indicated Claimant was "doing good."  (Tr. at 143.)  Claimant was alert and well groomed.  (Tr. at 143.)

On October 20, 2004, Nilima Bhirud, M.D. conducted a physical examination at the request of the State disability determination service.  In his assessment, he noted that Claimant gave a history of bipolar disorder and that he "gets frequent mood swings.  He is very impulsive.  He has been in trouble with law all his life.  He says he is seeing a psychiatrist presently."  (Tr. at 156.)

On November 3, 2004, Tracy Pauley-Smith, M.A. examined Claimant at the request of the State disability determination service.  Claimant reported he drinks daily and smokes marijuana when he can get it.  (Tr. at 162.)  Claimant's mood was within normal limits, and his affect was broad.  His judgment was average.  His immediate, recent and remote memory was within normal limits.  Ms. Pauley-Smith diagnosed alcohol abuse, marijuana abuse and mood disorder on Axis I and anti-social personality disorder on Axis II.  (Tr. at 163.)  She indicated that Claimant would not be capable of managing his finances "due to his extremely poor social choices he has made."  (Tr. at 165.)

Gina Puzzuoli, M.D., who treated Claimant at Process Strategies, completed a Residual Functional Capacity Questionnaire on or around November 15, 2004.  She indicated she saw Claimant

8

every month for medication management and had examined him four times. She stated Claimant's diagnosis was major depressive disorder and that Claimant was "doing well." (Tr. at 167.) She opined Claimant would have a difficult time working at a regular full time job. (Tr. at 169.) Dr. Puzzuoli opined that Claimant was markedly limited in the ability to understand and remember detailed instructions and slightly to moderately limited in almost all other areas. (Tr. at 171-73.) The vocational expert testified at the administrative hearing that when such limitations and others were included in a hypothetical question, he could identify no jobs. (Tr. at 282.)

A State agency medical source completed a Psychiatric Review Technique form on December 13, 2004, and opined that through the present, Claimant's mental impairments were not severe. (Tr. at 203-15.) In the notes section, the State agency medical source wrote that

> [t]he evidence does not support the findings of the
> 9/25/04 evaluation by Laberta Salamancha [sic]. His
> treating psychiatrist, the Psych CE, and the DO did not
> note significant problems. It is possible that he was
> under the influence of substances during the 9/25/04
> evaluation. Claimant is not credible. On the ADL form
> he reported that he does not interact with others, yet at
> the CE he reported he spent time drinking with his
> friends. He was cooperative during the evaluation. The
> CE did not support significant problems. Non-Severe
> limitations due to a mental disorder. Primary DX:
> substance abuse.

(Tr. at 215.) The finding was affirmed by a second State agency medical source on April 23, 2005. (Tr. at 203.) On another

9

Psychiatric Review Technique form dated December 13, 2004, a State agency medical source indicated that in evaluating Claimant's condition from July 15, 2002, through June 30, 2004, there was insufficient evidence. (Tr. at 217-29.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ improperly rejected Claimant's mental impairments and erred in finding them to be nonsevere; (2) the ALJ erred in failing to consider Claimant's subjective allegations related to his mental impairments; and (3) the ALJ erred in the weight afforded the medical evidence of record related to Claimant's mental impairments. (Pl.'s Br. at 6-19; Pl.'s Reply at 1-5.)

The Commissioner argues that (1) substantial evidence supports the ALJ's decision; (2) the ALJ did not err in finding Claimant's mental impairments nonsevere; and (3) the ALJ properly weighed the medical evidence of record related to Claimant's mental impairments. (Def.'s Br. at 10-19.)

When evaluating a claimant's mental impairments, the Social Security Administration uses a special sequential analysis outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2005). First, symptoms, signs, and laboratory findings are evaluated to determine whether a claimant has a medically determinable mental impairment. §§ 404.1520a(b)(1) and 416.920a(b)(1). Second, if the ALJ determines

that an impairment(s) exists, the ALJ must specify in his/her decision the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s). §§ 404.1520a(b)(1) and (e), 416.920a(b)(1) and (e). Third, the ALJ then must rate the degree of functional limitation resulting from the impairment(s). §§ 404.1520a(b)(2) and 416.920a(b)(2). Functional limitation is rated with respect to four broad areas (activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation). §§ 404.1520a(c)(3) and 416.920a(c)(3). The first three areas are rated on a five-point scale: None, mild, moderate, marked, and extreme. The fourth area is rated on a four-point scale: None, one or two, three, four or more. §§ 404.1520a(c)(4) and 416.920a(c)(4). A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise. §§ 404.1520a(d)(1) and 416.920a(d)(1). Fourth, if a mental impairment is "severe," the ALJ will determine if it meets or is equivalent in severity to a mental disorder listed in Appendix 1. §§ 404.1520a(d)(2) and 416.920a(d)(2). Fifth, if a mental impairment is "severe" but does not meet the criteria in the Listings, the ALJ will assess the claimant's residual functional capacity. §§ 404.1520a(d)(3) and 416.920a(d)(3). The ALJ incorporates the findings derived from the analysis in the ALJ's

decision:

> The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

§§ 404.1520a(e)(2) and 416.920a(e)(2).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2005). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2005).

Under § 404.1527(d)(2)(ii) and § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an

12

opinion is with the evidence as a whole, the more weight will be
given), and specialization (more weight given to an opinion by a
specialist about issues in his/her area of specialty).
Additionally, the regulations state that the Commissioner "will
always give good reasons in our notice of determination or decision
for the weight we give your treating source's opinion."   §§
404.1527(d)(2) and 416.927(d)(2).

Under § 404.1527(d)(1) and § 416.927(d)(1), more weight
generally is given to an examiner than to a non-examiner.  Sections
404.1527(d)(2) and 416.927(d)(2) provide that more weight will be
given to treating sources than to examining sources (and, of
course, than to non-examining sources).  The Fourth Circuit Court
of Appeals has held that "a non-examining physician's opinion
cannot by itself, serve as substantial evidence supporting a denial
of disability benefits when it is contradicted by all of the other
evidence in the record." Martin v. Secretary of Health, Education
and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener,
376 F.2d 517, 520-21 (4th Cir. 1967).  Thus, the opinion "of a non-
examining physician can be relied upon when it is consistent with
the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir.
1986).

In his decision, the ALJ summarized the evidence of record
from Ms. Salamacha, Process Strategies, Ms. Pauley-Smith and Dr.
Puzzuoli.  In addition, he considered the opinions of State agency

13

medical sources who opined that Claimant's mental impairments were not severe and that there was insufficient evidence to establish the presence of a severe mental impairment prior to Claimant's date last insured. (Tr. at 14-15.) The ALJ explained that he gave no significant weight to the limitations found by Ms. Salamacha, who examined Claimant at his counsel's request, "as the limitations are inconsistent with the other credible evidence of record." (Tr. at 14.) Regarding Ms. Pauley-Smith's diagnoses of alcohol abuse, marijuana abuse, mood disorder and anti-social personality disorder, the ALJ noted "that these diagnoses are not supported by any objective findings but are based on the claimant's reported history." (Tr. at 15.) As to Dr. Puzzuoli, who saw Claimant on four occasions and completed a Mental Residual Functional Capacity Questionnaire, the ALJ gave "no significant weight to the limitations found by Dr. Puzzuoli as this physician has only seen the claimant on four occasions, the findings are not substantiated by any clinical findings in the record, and the limitations are inconsistent with Dr. Puzzuoli's own opinion that the claimant was doing well." (Tr. at 15.) Finally, the ALJ noted the evidence of record from State agency medical sources, including their opinions regarding the "B" criteria. (Tr. at 15.) The ALJ concluded that "[b]ased on the above evidence, the undersigned finds that the claimant does not have a severe mental impairment." (Tr. at 15.)

The ALJ proceeded to the third step in the sequential analysis

14

and made the following findings regarding the "B" criteria:
Claimant has mild restrictions of activities of daily living, mild
difficulties in maintaining social functioning, mild difficulties
in maintaining concentration, persistence or pace and no episodes
of decompensation.  The ALJ cited Claimant's daily activities in
support of his ratings, but also mentions that Ms. Pauley-Smith
found that Claimant's persistence and pace were within normal
limits.  (Tr. at 15.)

The court proposes that the presiding District Judge find that
the ALJ's decision does not contain sufficient explanation, in
keeping with the applicable regulations cited above and related to
the evaluation of medical evidence, to make a determination about
whether the decision is supported by substantial evidence.  Though
the ALJ's decision is a bit ambiguous[2], it appears the ALJ
determined Claimant met the first and second prongs of the
sequential analysis outlined above related to the evaluation of
mental impairments and concluded that Claimant suffered a medically
determinable mental impairment.  The ALJ proceeded to a
consideration of the "B" criteria, and concluded that Claimant had
mild restrictions in activities of daily living, mild difficulties
in maintaining social functioning, mild difficulties in maintaining

_____

[2]   The order of the ALJ's decision, his rejection of the medical
evidence from treating and examining sources (particularly Ms. Pauley-Smith's
diagnoses) and his finding that Claimant's mental impairments are not severe
before addressing the "B" criteria, suggest the ALJ concluded Claimant did not
show the presence of a medically determinable mental impairment.

15

concentration, persistence and pace and no episodes of decompensation.

With the exception of the finding by Ms. Pauley-Smith about normal persistence and pace, the ALJ rejects the opinion of every treating and examining mental health source of record and instead, relies on the opinions of the two nonexamining State agency medical sources. The ALJ provides one-sentence reasons for rejecting the opinions of each of these treating and examining sources, but no real in depth analysis or sufficient explanation from which the court can make a recommendation about whether the determination that Claimant does not suffer a severe mental impairment is supported by substantial evidence. Without a better explanation from the ALJ as to the evidence of record supporting his rejection of the opinions of Dr. Puzzuoli and Ms. Salamacha and Ms. Pauley-Smith's diagnoses, one in keeping with the regulations related to the evaluation of medical evidence at 20 C.F.R. §§ 404.1527(d) and § 416.927(d), the court cannot recommend the ALJ's decision is supported by substantial evidence.

The court declines to address the remaining arguments raised by Claimant, as they can be addressed on remand.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g)

and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Goodwin, and this Magistrate Judge.

17

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

_July 16, 2007_
          Date

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge